Final case for argument this morning is 14-1059 Modine Manufacturing Company v. BorgWarner. The District Court in this case applied the wrong methodology while citing the right one to get the wrong result in this case. It misapplied the clear direction of Phillips and its progeny and started and ended with the most narrow definition for the words prevent and lock in general purpose dictionaries. If time permits, I will address two issues in my argument. The first is that the court incorrectly read into both Claims 1 and Claim 15 the concept of entire immovability. Well, and you've got Figure 4. Correct. And anything more than Figure 4, which I guess that's your argument that you can see that conceivably there could be some movement there. There's testimony regarding Figure 3 as well. Your read tells us, however, that Claim 1 isn't the history of this case. Well, if it's an open question, you're the one that has to persuade us you're right. And that I will do. It is in the specification, the embodiment showing attached in a locking fashion and attached in a frictional fashion clearly are listed as including Figures 3 and Figures 4. There was an election requirement by the Patent Office and Figure 3 was the chosen embodiment. But that does not change the language in the specification that clearly describes Figures 4 and Figures 3 as being covered by the terms attached in a locking fashion. And this lines 52 exemplary embodiments and that includes both Figures 3 and Figures 4. So even if Figure 4 is not an embodiment covered by the claims, and the reason I say it's an open question is while it doesn't show a plurality of springs, it only shows one side of it, it's clearly described in the other testimonial. Before you get to the question of whether locking means absolutely locking or locking means a little slipperiness, you've got to deal with at least one of and, right? Correct. And that would have been a second issue, but I'm happy to jump right into that. I didn't want to mention that, but I mean the short of the matter is that the Hughes device doesn't do both. Correct. There's no argument by the plaintiff here that there is a originally locking. You can only win on claim one if your claim interpretation prevails. Correct. Okay. Now on your claim interpretation, as the claim was originally filed, it was filed exactly the way you want it now. From the German. Yes, it was filed as an and-or. It was filed and-or, so it meant it could be either one or both. Correct. Now the claim, and at the time that claim was filed, you had two dependent claims. One claimed positively locking, the other claimed frictionally locking. Correct. So at the time the claim was filed, everything was really cool. It all fit. Then you amended your claim to take out the and-or and to put in at least one and then and, right? Right. And I think our Superguide case deals with that situation, and Superguide was on the books at the time the applicant filed these claims, right? Superguide was on the books. Superguide, I don't believe, and subsequent courts, which we've cited coming from as recently as this year, don't view Superguide as... For those subsequent courts, not this court. Not this court, yes. That's pretty irrelevant what other people say. Well, except Superguide... But go on. You have a situation where you amended your claim on purpose. Now, your argument by the applicant was, oh, this is cosmetic, right? Meaning it doesn't affect scope. Right. Right. But we know that's not true, because it clearly affects scope, because it means you win one way and you lose the other. It wasn't made to affect scope. That doesn't make any difference. The question is, does it or doesn't it affect scope? And it does, right? So, when I look at your specification, because that Superguide tells us, go look at the spec when you have this situation to see if you get any help, right? And in your specification, you've got... Or wherever it is, you've got only one reference. It's in Column 3. Now, in Column 3, at lines 48, 49, you see frictionally and or positively, right? Now, that relates back to the unamended claim. That reference obviously fits with the German translation of the unamended claim. You then see in the next thing, at lines 53, 54, frictionally and positively locking. You see both. And what Superguide teaches us when this language occurs, because everybody understands when you say at least something and, there's a little problem, because it doesn't make any sense. But you look at the spec to see if you get any help. And the spec here teaches me that the spec says both, frictionally and positively locking. There are two... I didn't see any other references. The references in the spec that we believe not only help us but should be dispositive are the language that you had quoted on lines 49 and 50, but also many of the dependent claims. It is clear from the prosecution history that what the patent attorney did is anytime there was the language and or, not only for... He fixed it by having a dependent claim that picked one or the other. Well, but he didn't change 8 and 9, which picked one or another, which we think is the dispositive issue. But if you also look at, for instance, claim 7, claim 7 says wherein the grid-like securing structure is one of one part and a plurality of parts. And again, in that case, the and or, where it's one part and or a plurality of parts, it was crossed out. So while this court might criticize his grammar, I think the file history shows what the patent lawyer was doing in this case is anytime there was an and or, he was complying with what he thought the patent examiner would like to see. But it wasn't required. It wasn't required. There's no law that said he couldn't write the claim the way he wanted the claim written. I don't believe there's anything in the MPEP, but it was a feeling then, and I believe it's a feeling now among many patentees. What do you do with the public notice function of the claim? What's the competition supposed to think? When they come to the claim and they see you originally applied for a claim, is your claim interpretation either one or the other or both? And then you amended the claim. And then they go and they read the governing case law dealing with this very language, superglide. And they read that, and the superglide says, well, I'm sorry, because you used and as conjunctive, and you're stuck with both. I mean, what's the world supposed to make if we write an opinion saying, oh, well, this is a case just like superglide, but we come out differently? If superglide announced a general rule in all cases and did not have the statement that we also need to look at the specification, I would agree we would be bound by superglide. I've looked at the specification, and the only reference to and or relates back and connects with what the original claim said. You're not allowed to change the spec. Correct. But claims 8 and 9 in this case would tell the competitor that the only way. Not after the amendment. Before the amendment, they tell you exactly what claim 8 and 9 mean. But claims 8 and 9 were still allowed after the amendment, and they did say where in the springs are attached. Exactly. They don't make any sense. It doesn't mean that they allowed them. It means that they're somehow valid for claim differentiation purposes. But they would make sense in the way numerous courts since superglide, district courts, I admit, understand that patent attorneys do use that phrase. Where does this fit with Nautilus, who just decided by the Supreme Court on Monday? I mean, we have here a conundrum. What are we supposed to make of language that says at least one of A and B? I don't believe to one of... How would you explain that to a college student? What does that language mean, at least one of something and something? If I were explaining it to a college student, I would say if you wanted it to be both A and B, you'd say both A and B. If you wanted just one of A and B or A alone, or if you wanted A and B, A alone or B alone... You'd say that. I would say that, and perhaps it is a... But they didn't say that here. But the grammar used at least one of modified the A and B here in a way that's not... It was not unknown to Pat. At least one of A or B. At least one of A or B, and then you would know what you meant. But to me, I'm very confused about what... The claim says at least one of A positively locking and fractionally locking. One of A. So, clearly, A has meaning because of the use of the word A. In other words, the item has to have both. And that's where I think the history here and the specification leads me to disagree with that interpretation, because... What in the specification? That the first thing in the specification would be the language which you had quoted. Which is suspect, because of the fact that the claim was amended to take that language out of the claim. But it was amended in such a way, and the cross-outs, at least consistently through all of the changes made, showed that... Okay. Show what? What it shows is what grammar the patent lawyer was using, because it would... For instance, in Claim 7, in one part and a plurality of parts, it couldn't be both. So it wasn't one of one category and one of the other. And similarly, the fact that 8 and 9 were left in there, and seemed to be understood by the examiner, and certainly understood by the patentee, as... It can be both, which could be covered by... I think your claim differentiation argument is probably the strongest reads. But to me, it's not necessarily dispositive, given that what we know was what the applicant did. They had a claim that reads exactly the way you want it. And they came in and they amended it. The fact that they call it cosmetic doesn't do much for me. Maybe it does for you, because... We know it's not cosmetic, because it affects the outcome determinately. The reason why we believe it is important to note the cosmetic is it wasn't in response to any argument made by the examiner. All the more, it's free choice. It's America. You can choose how much scope you want for your claim. It was, but it was also pleasing, or the patent lawyer thought it was pleasing, what the examiners at the time wanted to see. I see I'm into my rebuttal time, so... May I please report? Modine is trying to stretch claims for a patented EGR cooler that functions in exactly opposite the way that the Bohr-Warner device functions. The claims of the Modine patent require a plurality of springs that are fixed by being locked to a tube bundle to prevent relative movement between springs in the tube bundle. As a consequence, the springs are able to move relative to the housing and do move back and forth relative to the housing. The Bohr-Warner device was designed and functions exactly the opposite. The Bohr-Warner device... That goes to infringement, right? Can we talk about claim construction? I'm trying to give the background, Your Honor, for the claim construction and how the claims are being stretched to cover this particular device. If you'd like me to move on and not give the background, I'd be happy to. So the claims are being stretched to try to cover the Bohr-Warner device in which spring clips are not attached to the tube bundle in any way and allow the very relative movement that the Modine patent claims prevent between the spring clips and the tube bundle. As a consequence, the Bohr-Warner spring clips are stationary relative to the housing, so they function just the opposite. Now, that leads us right into the prevent language and what was meant by the word prevent. Within the context of Claim 1, Claim 1 has a limitation that the springs are attached by at least one of a frictionally locking and... at least a positively locking and frictionally locking fashion. So frictionally locking has no movement. We all agree with that. Everybody agrees with that, Your Honor. So, I mean, both claim construction disputes on the movement and the at least one, they kind of come together as one in that regard. That's correct, Your Honor. Okay, why don't you address then some of the points Judge Clevenger was making. Obviously, he was arguing with your friend on the other side. But tell me why, even if there's some ambiguity on at least one and not an and versus or, we can't look to the dependent claims to get absolute certainty as to what we're talking about here because otherwise it doesn't make any sense and those claims should have gone not. Why isn't that enough to go with the other claim construction? Okay, I'll start with the proposition that the claims were amended freely by choice as the court exactly noted. The change was made to put it in absolute conformance with how SuperGuide determines that those claims are construed. I understand that there are dependent claims, but in the end analysis, the court has consistently said that the claim differentiation does not trump the proper claim construction if the claim construction is clear from a reading of the claim itself. Well, how is it clear because isn't your reading of that phrase completely obliterate the need for the at least one language? If your construction is correct, what role does the at least one language play? The at least one of language, let me step back. I think we prevail even if the at least one of is read as an or condition because the accused device was neither positively nor frictionally locked. What the language adds is that there are different ways to achieve this prevention of relative movement by two different manners of locking and that's what they've claimed. They've claimed that you can mechanically lock and you also frictionally lock. Your argument is the claim means it has to do both. Our argument is the claim has to do both. That's correct. Then it doesn't matter whether you use and or. To the ultimate, I'm sorry. You haven't really satisfactorily answered for me the presiding judge's question as to what meaning do we give to the language at least one under your claim construction. Under our claim construction, at least one of, in this case, at least one of positively and frictionally locking is to be interpreted to include at least one of a positively locking fashion. The mechanical inter-engagement of elements, at least one of those, and at least one of frictionally locking, the contact pressure. That is manifest from the super guide decision which requires, because these are categories, the positively locking and frictionally locking because there are myriad of ways to do each as is supported in the record. They are categories and it requires at least one from each category in order to be within the scope of claim one. Were claims eight and nine in the application before the deletion of and or? No. No. Your Honor, that's not in the record. I'm telling you the truth. The answer to that is no. So they came in at the same time? Yes, Your Honor. And there's no record? It's not here in this record. And that's strange, isn't it? I mean, you understand it's a problem for you. I don't think it's a problem for us. And I can explain it because... Because you don't think either is messed. The positively locking or the frictionally locking. I believe they were both meant in the requirements of the claim. No, but not messed by your device. They're not covered by our device. Neither one is in our device, that's correct. So you're not positively locking because you have some play? Your Honor, are you? Or more play or no play? We don't call it play. We call it a designed-in movement to actually overcome the problem with the claimed invention. All of the testimony from the lead engineer, and as even admitted in one of Modine's filings with the district court, the amount of movement that is designed into the Bullhorn device is the complete and unfettered movement of the tubes relative to the housing. Within the context of this EGR cooler, the entire universe of movement is one millimeter. And these destructive forces build up over the course of that millimeter, repeatedly moving back and forth. If Your Honor, the record is clear that the amount of space that was designed into the Bullhorn device allows for greater, it's greater than that one millimeter of movement. Well, is it your position then that even if we were to reverse the claim construction, you're still going to prevail on infringement? The super guide portion, Your Honor, yes. But I believe that the positively, the district court defined positively lock in positively locking fashion and friction locking fashion independent of the super guide analysis where it said, and you still need both. It decided that positively locking requires that there be no movement between the attached components. And he also found that for that reason. Prevent means prevent. It doesn't mean allow movement. Correct. Prevent means prevent. And what's wrong with that interpretation of prevent? Nothing, absolutely nothing. We believe prevent means prevent. It's the relative movement is between the attached pieces, which is the springs and the two bundle. And in the Bullhorn device, there is no attachment between the spring clips. There's an argument that there's movement shown in figure four. Isn't that correct? There is an argument that that's there. Why don't you tell me why that argument doesn't have any merit? If Your Honor would. If you look at figure four. I would like to point to the. Figure three, I believe it was. Which one was it? Figure three that. It was figure four, Your Honor. Figure four is where they put in their brief and pointed and said there's movement. First of all, figure four was never made as pure speculation. And this is just the inventors. Tell me why it is they argue that figure four shows movement. Why they argue it shows movement? Because they argue that there's a mechanical interconnection that shows some slots. A little gap. Correct. That's what they argue. But Your Honor, the specification absolutely belies that conclusion. And it's what the court has already looked at. On page 858, at column three, line 50, it says, Two exemplary embodiments which show sprung metallic hook-shaped protrusions 12 as individual parts, which are attached in a frictionally and positively locking fashion to the grid-like metallic securing structures, have been represented in figures three and figure four. Everybody agrees that frictionally locked allows no movement. So by describing the figure four embodiment as being frictionally locked, there can be no movement. So whatever the inventor said, after the fact, that's not supported anywhere in the record. So the question is whether positively locking allows any movement, not whether frictionally locking. Everybody agrees that frictionally locking doesn't work if you have any movement. And we submit that it doesn't, because everybody also agrees that locking is used in positively locking and frictionally locking. Locking has the same result, to prevent relative movement between the two components. Their expert has said that, and that is noted in the record. So the fact that there... So whatever frictionally locking has to mean positively locking, even though we know frictionally locking has a specific meaning. The locking component has to be the same, the prevention of relative movement. Yes, I would agree with that statement. Do you have any more questions on that? If not, I'd like to maybe move on to the touch on the grid-like securing structure for a moment. The grid-like securing structure, we're asking the court to overturn the district court's decision, because we believe that the grid-like securing structure is a term that was coined for purposes of this particular claim. Grid-like securing structure had no meaning, no ordinary, regular meaning in the industry prior to this application. Then that limitation is not involved in the infringement analysis. The court found that that portion infringed, I believe, or was covered by the claim. And this is... This is an alternative. It's an alternative. If you were to prevail on what we've been talking about thus far, then this isn't necessary. That's correct. If we disagree with the district court on those terms, then you disagree. Yes, Your Honor, we're starting an alternative ground to support the finding of no infringement. And the question revolved around what is the proper definition for grid-like securing structure. We proffered a definition for grid-like securing structure that included a specific limitation that the grid rods extend through the coolant ducts. Now, again, that is born from the patent specification which describes the grid-like securing structure. The only thing we know about the grid-like securing structure from the specification is that it can either be in one or two parts and that in any event, it has to have grid rods that extend through the coolant duct. That's on page 858, column 4, and it's in the paragraph that begins at line 8. That's the only description of what is meant. And we believe that that language is a definition of the inventor for an inventor coined term. And it clearly says that they intend that the grid rods extend in every embodiment here through the coolant duct. And it should be right. The same grid-like securing structure should be interpreted to include that limitation. If your honors have no further questions, I don't want to belabor the points. Thank you. Thank you. Your honor, I'd like to focus on the reading in of the concept of immovability. Both of the claim terms at issue are attached in a positively and or frictionally locking fashion. I'm sorry. The word locking is pretty meaningful self-explanatory by itself. These are absolute terms. And that's where both the intrinsic and extrinsic evidence to one of this skill in the art, as well as ordinary meaning, is not as clear as your honors suggest. The figure four, there's both expert testimony. It's not speculation. And it's actually visible that there is some movement allowed. There's a space. It's a space. One doesn't know whether that's to account for manufacturing necessity because you couldn't possibly fit something in something unless the place you're fitting it's a little larger than what you're fitting in. And that's basically the testimony of the inventor who said you know that there are some tolerances. But a manufacturing tolerance that's just enough to allow something to fit in is a manufacturing tolerance. It's different from a manufacturing tolerance that's designed in to create room for movement. What I was looking for in the spec was something to tell me that what the drawing means is designed in space to accommodate movement as opposed to an honest reflection of the impossibility of fitting a structure into a hole unless the hole is bigger than the structure. Well, the size of that space can be viewed and the testimony was it's approximately two and a half millimeters which is larger than the space in the drawing. Based on that drawing in figure four. But more importantly the evidence of the experts on both sides is that attached in a locking fashion does not necessarily mean no movement whatsoever. The district court went right to the most narrow definition in the dictionary and the most narrow real life example that he could find. While those in the field, yes I agree they are inventors. But the other place you can look is the patent application, non-litigation application of Borg-Warner which used the term prevent movement affixed and clamped in some of the records that we showed. Even when there is that minimal amount of movement, one of skill in the art still refers to it as prevent. Can I ask one question? This is about the harmony or disharmony between claims one and fifteen. If we were to decide that in claim fifteen prevent means what the district court said it meant which is prevent. Does that color or affect what locking means? I don't believe it does. I was looking for cases, I couldn't find any cases that tell me how you have different language. Prevent is certainly different from locking. But in the context of the patent they are both apparently looking to the same problem. The difference between claim one and claim fifteen is that claim one attaches the spring in a locking fashion to the grid like structure. While in claim fifteen it is attached to the tube to prevent relative movement there between. So we could say that in claim fifteen means prevent but positively locking has play. You could. But I must say that if in that case you don't overrule the district court on the conjunctive rather than disjunctive, we don't have an argument about a friction lock. Thank you.